UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CJB GLOBAL IMPORTS, INC.,

Plaintiff,

- against -

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,

Defendants.

----------------------------------------X

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

26 Civ. 6568 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff, a seller of a product described as the "Lymphatic Brush," which, according to plaintiff's website, "is the world's FIRST and ONLY device specifically designed for facial and body lymphatic drainage," ECF No. 1 ("Compl.") ¶ 9, filed this case against 100 defendants in a format that has come to be known as "Schedule A" litigation.[1] Specifically, plaintiff alleges that defendants, each of whom plaintiff believes "operate[s] from China or other foreign jurisdictions[,]" ECF No. 13 ("Mot.") at 14, sell products that violate plaintiff's design patent for the Lymphatic Brush and utilize certain marketing images for which plaintiff has

---

[1] See generally Eric Goldman, A SAD Scheme of Abusive Intellectual Property Litigation, 123 Colum. L. Rev. 183 (2023); Sarah Fackrell, The Counterfeit Sham, 138 Harv. L. Rev. 471 (2024); Dennis Crouch, After "Schedule A": The Cross-Border IP Enforcement Gap, Patentlyo (Aug. 17, 2025), https://patentlyo.com/patent/2025/08/schedule-border-enforcement.html.

a registered copyright on defendants' online storefronts, Compl. ¶ 19.

## I. Background

As is characteristic of Schedule A cases, on July 31, 2026 plaintiff filed a Complaint on the public docket containing significant redactions. See, e.g., Compl. ¶ 21 (noting that information had been "REMOVED FROM PUBLIC DOCKET"). Among the redacted information was "Schedule A" to the Complaint, which lists each of the defendants against whom plaintiff brings this action. See id. at 23.

Subsequently, on August 5, 2026, plaintiff filed additional documents, many of which were filed under seal, including: (1) an unredacted copy of the Complaint, ECF No. 11 (filed under seal); (2) an ex parte motion for a temporary restraining order, ECF No. 12, and related memorandum of law, Mot.; (3) a declaration from plaintiff's counsel in support of the motion, ECF No. 14; (4) a declaration from plaintiff's owner, ECF No. 15 ("Braden Decl.") (filed under seal); and (5) a proposed order to show cause seeking expedited and injunctive relief, ECF No. 16 (filed under seal). Plaintiff justified its request to file certain documents under seal on the basis that sealing is "necessary to prevent the Defendants from learning of these proceedings prior to the entry of a temporary restraining order" because "[i]f Defendants were to learn of these proceedings prematurely the likely result would be

the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions[.]" ECF No. 10 at 2.

The Court held oral argument on plaintiff's requested relief on August 11, 2026, at which counsel for plaintiff appeared. See Dkt. Entry for Aug. 11, 2026.

## II. Plaintiff's Requested Relief

Plaintiff's requested relief is far reaching and would have substantial impact on the defendants before they are aware of this lawsuit. Of particular note, for each of the 100 defendants, plaintiff seeks, inter alia:

- A temporary order restraining all alleged infringing business activity;
- Leave to conduct expedited discovery from defined Financial Institutions, domain registrars, and defendants;
- A temporary asset restraint; and
- Leave to serve the complaint and the TRO electronically.

Specifically, plaintiff's request for expedited discovery asks that the Court order certain "Financial Institutions"[2] to provide:

> "within five (5) days of receipt of [the Court order] . . . [1] Identifying information for Defendants, including all available contact information ([including] all known e-mail addresses and mailing addresses), as well as all associated account numbers and account balances, regardless of the platform or institution. [2] Any User Accounts and/or online marketplace websites affiliated with Defendants that are not listed on

[2] As defined in plaintiff's Proposed Order to Show Cause, "Financial Institutions" includes "any Financial Institutions such as (i) Amazon, (ii) PayPal, Inc. . . . (iii) Payoneer, Inc. . . . and (iv) Ping Pong Global Solutions Inc." ECF No. 16 at 5.

> Schedule A to the Complaint . . . [and 3] Information concerning any of Defendants' Accounts or Defendants' Assets including any and all related, connected or otherwise associated accounts or assets, regardless of the hosting platform or institution.

ECF No. 16 at 6.

As to the request for a temporary asset restraint, plaintiff seeks an order that:

> within five (5) days of receipt of [the Court order]. . . any Financial Institutions . . . and domain registrars[3] shall locate all accounts associated with Defendants . . . and other assets belonging to Defendants . . . and shall locate, attach, and restrain the transfer or disposing of monies or funds from Defendants' Accounts, as well as the transfer or disposing of Defendants' Assets, until further ordered by this Court.

Id. at 5-6. Finally, with respect to plaintiff's request to provide notice electronically, plaintiff seeks an order from the Court that service of the Complaint "and other relevant documents" "shall be deemed effective as to Defendants if it is completed by":

> Delivery of: (i) PDF copies of [the Court order] together with Complaint, and other relevant documents; (ii) a link to a website where each Defendant will be able to download PDF copies of [the Court order] together with Complaint, and other relevant documents, and all papers filed in support of Plaintiff's Application . . . to Defendants' e-mail addresses as provided by the Financial Institutions or to the Financial Institutions if the Financial institutions are unable to provide e-mail addresses.

Id. at 7.

---

[3] The term "domain registrars" is not defined in plaintiff's proposed order.

Stated otherwise, if all of plaintiff's requested ex parte relief were to be granted, plaintiff would at the outset be entitled to broad discovery with serious consequences to defendants. Plaintiff would first be authorized to serve expedited discovery on the Financial Institutions, who would be obligated to provide all known e-mail addresses and mailing addresses for defendants, as well as information relating to defendants' assets and accounts "regardless of the hosting platform or institution." Id. at 6. Having received that information, and still without notice to any defendant, plaintiff could then freeze the assets maintained in any of the accounts identified through expedited discovery of 100 different international defendants. Acknowledging that plaintiff's request for an asset restraint is in no way cabined only to accounts through which defendants sell the allegedly infringing products, this restraint would presumably apply to all of defendants' accounts and assets regardless of their relation to this case. Only after discovery has been provided and the assets frozen would plaintiff notify any of the defendants of the existence of this action, through a proposed procedure inconsistent with the requirements of international service under the Hague Convention.

The potentially comprehensive seizure of assets not limited to the allegedly infringing sales at issue would inevitably have an impact on the ability of the defendants in China (or otherwise

abroad) to challenge the seizure of their assets and defend against plaintiff's claims. Unsurprisingly, the literature tells us that Schedule A cases often result in a default by defendants. See Eric Goldman, A SAD Scheme of Abusive Intellectual Property Litigation, 123 Colum. L. Rev. 183, 196 (2023) (Of 2,688 Schedule A cases "that listed a resolution [], 70% were categorized as 'default judgments' . . . and less than 2% of the resolutions had some other conclusion (like an adjudication on the merits).")

Faced with comparable requests, courts elsewhere have emphasized that such relief "can distort the parties' respective settlement positions and otherwise alter the balance of power to defendants' detriment." Eicher Motors Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule "A", 794 F. Supp. 3d 543, 552 (N.D. Ill. 2025); see also id. ("A party faced at the outset with the specter of a secretly-imposed asset restraint starts the game backed up against their own endzone."). It may not be an exaggeration to say that once plaintiff's requested relief has been authorized, the case is effectively over.

**LEGAL STANDARD**

"Preliminary injunctive relief, including the temporary restraining order the Plaintiff seeks here, is an 'extraordinary and drastic remedy' that is 'unavailable except in extraordinary circumstances.'" Murray v. Cuomo, 460 F. Supp. 3d 430, 442 (S.D.N.Y. 2020) (quoting Moore v. Consol. Edison Co., 409 F.3d

506, 511 (2d Cir. 2005)). "The 'standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction.'" Id. (alteration in original) (quoting Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992)). Specifically, "[t]o obtain such relief, the plaintiff must show '(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that [the requested relief] is in the public interest.'" National Coalition on Black Civic Participation v. Wohl, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (alteration in original) (quoting N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, 883 F.3d 32, 37 (2d Cir. 2018)).

**DISCUSSION**

Since this is an ex parte proceeding, the Court is cognizant of its heightened responsibility "to be sure that the standard for a TRO is satisfied" in the absence of adversarial briefing. WHAM-O Holding, LTD v. The Individuals Identified on Schedule A, 2026 WL 1453632, at *2 (S.D.N.Y. May 22, 2026) ("The Court is conscious that it has raised concerns with Wham-O's motion that no party has raised. But in these ex-parte proceedings, no other party can raise them."). Further, "[i]n an ex parte proceeding, in which the adversary system lacks its usual safeguards, the duties on the

moving party are correspondingly greater." Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corp., 2007 WL 4258238, at *2 (S.D.N.Y. Dec. 4, 2007) (internal citation and quotation marks omitted); see also Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974) ("[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."). At this stage, we limit our discussion to the likelihood of success on the merits element of the analysis and find, for the following reasons, that plaintiff has not sufficiently shown its entitlement to the requested relief.[4]

## I. The Design Patent

As alleged, plaintiff is the holder of a design patent for its Lymphatic Brush. See ECF No. 1-2. Plaintiff's design patent consists of a claim for "[t]he ornamental design for a brush as shown and described" along with seven drawings of the design from various angles. Id. at 2. No detailed written description of the design is provided, nor are the dimensions of the patented design provided. See id.

[4] Our focus on the likelihood of success on the merits should not be understood as a ruling that the other aspects of the standard for relief have been met.

With respect to plaintiff's design patent, plaintiff has failed to show a likelihood of success on the merits for the simple reason that plaintiff has chosen not to submit its own product nor a physical example of any of defendants' products for comparison. We acknowledge that plaintiff has provided documentation of order summaries of purchases from 99 of the 100 defendants.[5] See ECF No. 11-7. However, as plaintiff's counsel acknowledged on the record, the decision was made to cancel each and every order shortly after it was placed.[6] See ECF No. 17 ("OA Tr.") at 2:17-3:4. As a result, there are no examples in the record of any alleged infringing product sold by any defendant beyond

---

[5] As to the remaining defendant ("Doe #1"), plaintiff instead submitted screenshots of an email exchange between plaintiff and Doe #1 relating to the allegedly infringing product. ECF No. 15-1; ECF No. 11-1 at 2-11. Arguably, a different analysis could be applicable to Doe #1; however, plaintiff makes no effort to differentiate between Doe #1 and the other 99 defendants for purposes of the requested relief.

[6] At this juncture, the Court does not dispute that cancelled orders, such as the orders plaintiff has submitted proof of here, can satisfy the requirements of personal jurisdiction as applied to a foreign defendant. American Girl, LLC v. Zembrka, 118 F.4th 271, 277-78 (2d Cir. 2024) (New York's long-arm statute "doesn't require a completed sale. It only requires a transaction."). However, in that regard, the order summaries submitted by plaintiff suggest that the orders were never intended to be genuine purchases. See, e.g., ECF No. 11-7 at 2 (noting that the item should be shipped to "Florine-TLB-FTE Blibymidil"). Further, the order summaries indicate that they were to be shipped to "MANHATTAN COMMUNITY BOARD 3" at 95 Rivington Street in Manhattan. Id. However, the website for Manhattan Community Board 3 indicates that its address is 59 East 4th Street, not 95 Rivington Street, see Manhattan Community Board 3, Contact (last accessed Aug. 24, 2026), https://www.nyc.gov/site/manhattancb3/about/contact.page, while 95 Rivington Street appears to be a residential building with apartments including a two-story duplex with estimated rent of $12,000 per month, see StreetEasy, 95 Rivington St. #PH (last accessed Aug. 24, 2026), https://streeteasy.com/building/95-rivington-street-new_york/ph?utm_campaign=rental_listing&utm_medium=share&utm_source=web&lstt=dqFset0AArOwmbxk3D1oIVvxSVDbWN7o-R1Ne24N-W0gEjXMdbdWhsf2vLoewHz6XGAJhsb2c8S5gK3p.

screenshots of defendants' purported listings and order confirmations. Thus, there is no basis upon which the Court could make a meaningful comparison sufficient to support the "extraordinary and drastic" relief that plaintiff seeks.[7]

At oral argument, plaintiff asserted that images of the listings of the allegedly infringing product online could provide sufficient comparison to sustain the requested relief. OA Tr. at 7:7-17. The Court rejects that suggestion on the facts of this case. "In determining whether an accused product infringes a patented design, [the] court applies the 'ordinary observer' test." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Under the ordinary observer test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008).

Plaintiff has only a design patent protecting the ornamental features of its design, not a utility patent preventing competitors

[7] The position in which plaintiff finds itself is a self-inflicted wound. Plaintiff made a conscious choice to cancel each of the orders it placed, thus depriving the Court of the ability to meaningfully compare the products. OA Tr. at 8:12-14 (plaintiff's counsel: "it's my client's decision not to [go through with the orders].").

from selling products with the same intended function as plaintiff's products. See Top Brand LLC v. Cozy Comfort Company LLC, 143 F.4th 1349, 1358 (Fed. Cir. 2025) ("Design patents are given narrow scope."). Therefore, any existing differences between the products sold by defendants and those sold by plaintiff are of paramount importance. In this context, particularly given that plaintiff asserts design patent claims against 100 separate defendants, the Court is unable to determine from screenshots alone that plaintiff has satisfied the ordinary observer test and is likely to succeed on its design patent claim against each of the 100 defendants. As such, plaintiff has not demonstrated a likelihood of success on the merits as to its design patent claim, and the requested preliminary relief cannot be granted.

## II. Plaintiff's Copyright

We turn next to plaintiff's copyright claim. As alleged, plaintiff "is the owner and sole rights holder to several marketing images, created to help support and market the Lymphatic Brush." Compl. ¶ 10. Plaintiff alleges "that the Defendants were selling products that displayed the Copyrighted Work . . . to market and sell their infringing products." Id. ¶ 19. Plaintiff's copyright registration lists an effective date of February 6, 2026. ECF No. 1-1 at 6. The registration indicates that the photographs were initially published just over three years prior, in November and December 2022, and it does not appear that plaintiff included a

copyright symbol when it used the images such that an observer would be on notice that the photographs were entitled to copyright protection. Id.

Significantly -- and at this stage, determinatively -- plaintiff's exhibits do not demonstrate that all of the defendants allegedly used the copyrighted images. Specifically, ECF No. 11-1 at pages 32, 41, and 84 are examples of certain defendants' product listings for which plaintiff does not allege that any of the copyrighted images were used. Indeed, plaintiff's exhibits reflect that 22 of the 100 defendants have not violated plaintiff's copyright. See generally ECF Nos. 11-1-11-6. Again, plaintiff's requested relief sweeps too broadly. On the state of the record before the Court, plaintiff is unable to establish a likelihood of success on the merits as to each defendant for the requested injunctive relief, if for no other reason than there appears to be no basis for a copyright claim against many of the defendants.[8][9]

[8] We note that if the plaintiff's concern was truly in protecting their copyright, the Digital Millenium Copyright Act contemplates that copyright holders may enforce their copyright directly through service providers like Amazon. See 17 U.S.C. § 512(g)(1) (absolving service providers of liability for "any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing.").

[9] Plaintiff does not argue that, in the absence of a finding of a likelihood of success on the merits, it is entitled to the requested relief because it has shown "both serious questions on the merits and a balance of hardships decidedly favoring the moving party[.]" Nat'l Coalition, 498 F. Supp. 3d at 469. Nonetheless, for the avoidance of doubt, we conclude that this alternative pathway is not available to plaintiff because the Court cannot find that serious questions on the merits exist for the same reasons as we do not find that there is a likelihood of success on the merits. Further, in light of the requested restraint on 100 defendants' assets and on the one-sided record before us, the

**III. Joinder**

Finally, 35 U.S.C. § 299(b) presents an additional issue with plaintiff's decision to sue 100 defendants for design patent infringement. Under that provision, "accused infringers may not be joined in one action as defendants or counterclaim defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." Indeed, "[c]ourts in this District have held that, in patent infringement cases, the fact that two parties may manufacture or sell similar products, and these sales or production may have infringed the identical patent owned by the plaintiff[] is not sufficient to join unrelated parties as defendants in the same lawsuit[.]" Williamson v. Verizon Communications, Inc., 2013 WL 323992, at *1 (S.D.N.Y. Jan. 18, 2013). Here, while plaintiff alleges, "[u]pon information and belief," that defendants "receive the Infringing Products from one or more common suppliers, manufacturers, factories, and/or dropshipping sources, and then advertise, offer for sale, and sell those Infringing Products through common retail platforms[,]" Compl. ¶ 12, this unsupported allegation is insufficient to satisfy the requirements of Section 299(b). Indeed, the fact that plaintiff placed 99 separate orders to the same address in Manhattan, see ECF No. 11-7, undercuts the idea that defendants

---

Court is unable to conclude that the balance of hardships decidedly favor plaintiff.

are related because the use of a single purchasing address would have placed defendants on notice that litigation was forthcoming. Thus, while the issue is not presently before us, we observe that these defendants may be improperly joined for purposes of this litigation.

**CONCLUSION**

For the foregoing reasons, the Court denies plaintiff's application for the entry of a temporary restraining order. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 12.

Dated: August 26, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE